UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MIKEL NEAL and RACHELLE FEARS-NEAL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO.: 1:15-CV-168-TLS ) |
| RICK BACKS and CITY OF MARION, INDIANA, | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Defendant City of Marion's Motion to Dismiss [ECF No. 52] and Defendant Rick Backs' Motion to Dismiss [ECF No. 55] the Second Amended Complaint [ECF No. 49] of Plaintiffs Mikel Neal and Rachelle Fears-Neal. The Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that it fails to state any claim upon which relief can be granted. On June 7, 2016, the Plaintiffs filed their Response [ECF No. 63] to the City's Motion. The City's Reply [ECF No. 66] was dated June 10, 2016. The Plaintiffs' Response [ECF No. 67] to Defendant Backs' Motion was filed on June 17, 2016. On June 23, 2016, Defendant Backs' Reply [ECF No. 68] was filed. This matter is now ripe for the Court's review.

**BACKGROUND**

Plaintiff Neal, an African-American, is a fire department officer in the City of Marion, Indiana. (Second Amend. Compl. ¶ 4, ECF No. 49.) The Plaintiffs are both adult residents of Indiana. (*Id.* ¶¶ 4–5.) Defendant Backs, a Caucasian, is also an adult resident of Indiana, Deputy Chief of Marion's fire department, and an employee of the City of Marion. (*Id.* ¶ 6.) The City of

Marion is a political subdivision and governmental entity located in Grant County, Indiana. (*Id.* ¶ 7.)

The incidents giving rise to this lawsuit arose on February 13, 2015. Plaintiff Neal was on duty at the fire station in Marion with Engineer Jake Morrow, Captain Eddie Miller, and Private Scott Snyder who were participating in ropes and knots training. (*Id.* ¶ 8) At some point, Defendant Backs arrived and asked Miller for the rope that he was using. (*Id.* ¶ 13.) Subsequently, Miller said to Defendant Backs that he did not "think you should be doing that." (*Id.* ¶ 14.) Defendant Backs then called Plaintiff Neal's name and tossed the rope to him, which he had tied into a hangman's noose. (*Id.* ¶ 15.)

"Neal caught the noose and set it down on the table and shook his head in shock." (*Id.* ¶ 16.) Defendant Backs left the room, Miller immediately took the noose apart, and "Snyder seemed stunned and just sat with a shocked look on his face." (*Id.* ¶¶ 17–18, 20.) "Morrow appeared upset and wanted to immediately record the incident" (*Id.* ¶ 19), but Plaintiff Neal told him not to (*Id.* ¶ 21). Plaintiff Neal took a few weeks to "really pray[] on how to handle this situation" and "was unable to shake the severity of . . . Backs' actions." (*Id.* ¶ 21.) The only employee that Plaintiff Neal allegedly notified about the incident was Miller, and during their conversation he told Miller that he would file a formal complaint regarding the incident with Defendant Backs. (*Id.* ¶ 24.)

"Subsequent to March 5, 2015, but before 300 days after March 5, 2015, [Plaintiff Neal] . . . filed a charge with the EEOC for violation of his rights pursuant to Title VII." (*Id.* ¶ 26.) "On September 16, 2015, the U.S. Department of Justice, Civil Rights Division issued its right to sue letter with regard to [Plaintiff Neal's] claims under Title VII." (*Id.* ¶ 28.) Plaintiff Neal filed his initial Complaint [ECF No. 1] on June 30, 2015, eventually superseded by the

2

Second Amended Complaint [ECF No. 49] on April 19, 2016. In the Amended Complaint, the Plaintiffs allege that the incident caused "serious and permanent emotional injuries requiring time off work and multiple counseling session[s]." (*Id.* ¶ 25.) Additionally, Plaintiff Neal was "on sick leave as a result of the Defendants' . . . conduct." (*Id.* ¶ 27.) Plaintiff Neal asserted a § 1983 claim against Defendant Backs for violation of the Fourteenth Amendment's Due Process Clause because his behavior "shocks the conscious." (*Id.* ¶¶ 38, 40.) Plaintiff Fears-Neal asserted a claim for loss of consortium for Defendant Backs' constitutional tort. (*Id.* ¶ 43.) Lastly, Plaintiff Neal asserted claims against the City for Title VII discrimination and state tort law violations. (*Id.* ¶¶ 41–42.)

In support of his Title VII claim, Plaintiff Neal alleged the following additional incidents of workplace discrimination within the fire department:

- On "October 3, 2014, a firefighter, Sam Pattison, referred to another firefighter, Curtis Garr, as a 'n*****' in front of several other firefighters." Only after "public protest on this issue [was] firefighter Pattison . . . eventually suspended." (*Id.* ¶ 30.)
- Plaintiff Neal was one of four "African American firemen . . . working together at Station 6" that "Steve Gorrell, who was at that time the Fire Chief and Caucasian, called . . . the 'Soul Patrol.'" (*Id.* ¶ 31.)
- At some time, "Larry Emmons, an African American, won a lawsuit against the City of Marion for not being promoted due to his race." (*Id.* ¶ 32.)
- Gorrell once said "I am going to have to hire 'one of them' in order to keep the NAACP from bringing a hiring process lawsuit again." (*Id.* ¶ 33.)
- "Captain Jason Lamb, a Caucasian, has a confederate flag on his forearm." (*Id.* ¶ 34.)

- Defendant Backs "previously made a noose in the presence of" another African American "fire department employee, Fred McMullen." (*Id.* ¶ 35.)

- An African American employee "was asked a daily 'black question'" by a Caucasian employee. (*Id*. ¶ 36.)

- An attached Exhibit showed that Marion's mayor sent a memorandum to all municipal agencies regarding "Racial or Sexual Slurs" on January 19, 1993. (*Id.* Ex. B.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

This Court properly has subject matter jurisdiction over the case because the Plaintiffs' claims arise under the Constitution and the laws of the United States, 28 U.S.C. § 1331, and the state law claims are within the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

Plaintiff Neal alleges a claim against Defendant Backs pursuant to 42 U.S.C. § 1983 for the violation of his substantive due process rights. Plaintiff Fears-Neal alleges a claim against Defendant Backs for loss of consortium as a result of that alleged constitutional violation. Plaintiff Neal also alleges that the City violated Title VII and state tort law. The Court analyzes the sufficiency of these claims in turn.

**A.     42 U.S.C. § 1983 Claim**

Plaintiff Neal argues that Defendant Backs' conduct—tying a hangman's noose and throwing it at him at work—violated his substantive due process rights. To prevail on a § 1983 claim, a plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

Substantive due process claims, while "very limited" in scope, *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005), protect fundamental rights and protect individuals from "harmful, arbitrary acts by public officials," *Geinosky v. City of Chi.*, 675 F.3d 743, 750 (7th Cir. 2012). The United States Supreme Court has articulated a two-part analysis for determining whether a right is fundamental for a substantive due process claim:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive due process cases a careful description of the asserted fundamental liberty interest.

*Washington v. Glucksberg*, 521 U.S. 702, 721–22 (1997). "But such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Id.* For such claims to be actionable, the alleged conduct must "shock the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998); *Rochin v. California*, 342 U.S. 165, 172 (1952); *see Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014) ("Under this standard, abuse that is merely tortious or even 'abhorrent' does not offend substantive due process.") (quoting *Tun*, 398 F.3d at 902); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("[E]very official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation.").

Lower courts are cautioned against expanding the scope of substantive due process "beyond barring government interference with the fundamental rights of marriage, reproduction, child-rearing, and bodily integrity because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Viehweg*, 559 Fed. Appx. at 552 (citing *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992)). Here, the parties dispute whether the right at issue is fundamental. Plaintiff Neal argues that Defendant Backs violated his "right to bodily integrity" (Pl.'s Resp. to Def. Backs Mot. Dismiss 6, ECF No. 67), while Defendant Backs states that the right to be free from racial harassment in the workplace is at issue (Def. Backs Mot. Dismiss 5, ECF No. 55).

Whether or not the right at issue is fundamental, the Court finds that the facts as alleged fail to meet the high standard for substantive due process claims. *Geinosky*, 675 F.3d at 750. This high standard was not met when a police officer drove 100 mph in pursuit of a fleeing suspect, such tactics unintentionally leading to the suspect's death, *Lewis*, 523 U.S. at 846, nor was it met when a student was expelled after participating in a school shooting conspiracy that was never carried out, *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013–14 (7th Cir. 2002). To be sure, the Court disapproves of Defendant Backs' conduct, which was racially insensitive and below the standard of decency to which public employees and coworkers should aspire. *Cole v. Bd. of Tr. N. Ill. Univ.*, -- F.3d --, 2016 WL 5394654, at *8 (7th Cir. Sept. 27, 2016) ("Bad 'joke' or not, the presence of a hangman's noose in the workplace is not acceptable.") However, Defendant Backs' conduct does not so shock the conscience to rise to the level of a deprivation of Plaintiff Neal's substantive due process rights. The allegations in the Amended Complaint fail

to state a § 1983 claim upon which relief can be granted. Accordingly, the § 1983 claim is dismissed.[1]

**B.     Loss of Consortium Claim**

Plaintiff Fears-Neal asserts a claim for loss of consortium for the alleged constitutional violations. In the Seventh Circuit, a viable claim for loss of consortium due to a constitutional violation requires a state actor's purposeful interference with the familial relationship. *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005). To extend liability when no allegations of purposeful interference exist again risks constitutionalizing tort law, this time for those "individuals who happen to have families" and spouses. *Id.* The only facts pleaded in the Amended Complaint show that the Plaintiffs "suffered serious and permanent emotional injuries requiring time off work and multiple counseling session[s]." (Second Amend. Compl. ¶ 25.) Plaintiff Fears-Neal did not plead facts in the Amended Complaint that show Mr. Backs purposefully interfered with the Plaintiffs' familial relationship. Accordingly, the Amended Complaint fails to state a claim upon which relief can be granted, and the loss of consortium claim is dismissed.

**C.     Title VII Claim**

Plaintiff Neal puts forth two separate theories of recovery under Title VII. First, that the City committed an "adverse employment action" because he "was required to essentially use up nearly all of his sick time allowed under the contract with the City." (*Id.* ¶ 27; Pl.'s Resp. City Mot. Dismiss 5, ECF No. 63.) Second, that the City created a hostile or abusive work environment by enabling Defendant Backs' actions.

---

[1] Having dismissed the § 1983 claim for failing to state a claim upon which relief can be granted, the Court expresses no opinion as to the merit of Defendant Backs' qualified immunity argument.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Unlawful employment practices are both "decisions that have direct economic consequences, such as termination, demotion, and pay cuts" and "the creation or perpetuation of a discriminatory work environment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2440 (2013). A prima facie case for hostile work environment requires a showing that: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). The factors a court considers in deciding whether harassment is severe or pervasive is the frequency of the discriminatory conduct, that conduct's severity, whether the conduct is physically threatening or humiliating versus just an offensive utterance, and whether that conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

With regard to Plaintiff Neal's first theory of liability, there are no allegations in the Amended Complaint that show the City itself required him to "use up nearly all of his sick time." (Second Amend. Compl. ¶ 27.) Thus, the City itself cannot be said to have taken an adverse employment action against Plaintiff Neal that had direct economic consequences. With regard to Plaintiff's Neal's second theory of liability—that the City created a hostile work environment—a more thorough analysis is necessary. An "[e]mployer is vicariously liable when a supervisor takes a tangible employment action" in creating the hostile work environment. *Vance*, 133 S. Ct. at 2442. A "supervisor" is an employee "empowered . . . to take tangible employment actions

against the victim, i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2443. When a supervisor does not take a tangible employment action to create the hostile work environment, then the employer may assert an affirmative defense to avoid liability. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (noting possible defenses that employer "exercised reasonable care to prevent and correct promptly . . . harassing behavior" or "the plaintiff . . . unreasonably failed to take advantage of any preventive or corrective opportunities provided.").

In briefing this issue, the parties disputed whether the enumerated factors sufficiently alleged a hostile work environment. Indeed, "the presence of a hangman's noose in the workplace is not acceptable," *Cole*, 2016 WL 5394654, at *8, particularly if directed toward someone of African American descent. The only other incidents alleged in the Amended Complaint that directly affected Plaintiff Neal's workplace experiences were when a coworker called him and three other African American employees the "soul patrol" (Second Amend. Compl. ¶ 31), and the fact that an employee had a confederate flag tattoo (*Id.* ¶ 35). The Court finds that, at least at the motion to dismiss stage, these allegations plausibly give rise to the existence of a hostile work environment. In addition, the Court finds that Plaintiff Neal has sufficiently alleged that Defendant Backs was a supervisor. While the only fact alleged is Defendant Backs' title of "Deputy Chief" (*Id.* ¶ 6), it can be inferred from his title that he had supervisory authority over Plaintiff Neal.

However, the Court finds that Plaintiff Neal has not alleged sufficient facts to show that Defendant Backs took tangible employment action. Such actions are "official act[s] of the enterprise," and "the means by which the supervisor brings the official power of the enterprise to

10

bear on subordinates." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762–63 (1998). No facts show that Defendant Backs could control assignments, salary, workflow, or make reassignment decisions over Plaintiff Neal. Additionally, one coworker's bullying of another does not qualify as a tangible employment action unless it "fall[s] within the special province of the supervisor." *Id.* at 762 (distinguishing supervisors from coworkers and noting that "[a] co-worker can break a co-worker's arm as easily as a supervisor. . . . But one co-worker cannot dock another's pay."). No facts show that Defendant Backs' offensive conduct, which caused Plaintiff Neal to use up all his sick days, qualified as a tangible employment action.

As the Amended Complaint fails to allege that Defendant Backs took tangible employment action, the City is entitled to raise an affirmative defense to Title VII liability. But unless a complaint sets out "facts that establish an impenetrable defense to its claims," *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009), a court should not base a Rule 12(b)(6) dismissal on the viability of an affirmative defense, *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Here, the facts alleged in the Amended Complaint do not set forth all the elements necessary for the City to allege an affirmative defense barring Plaintiff Neal's recovery. For instance, the facts leave open the possibility that the City lacked procedures for employees to report workplace discrimination incidents. Further, the Amended Complaint plausibly suggests that the City had constructive knowledge of Defendant Backs' behavior: Plaintiff Neal's coworkers witnessed the incident, all of whom were of different ranks and in different employment capacities (Second Amend. Compl. ¶ 8); Defendant Backs had displayed a hangman's noose in the workplace on one other occasion (*Id.* ¶ 35); racial slurs and a

daily "black question" were previously directed at African American employees (*Id.* ¶¶ 30, 36); and, a white employee had complained about the NAACP (*Id.* ¶ 33).[2]

Based upon the allegations in the Amended Complaint, the Court finds that Plaintiff Neal has plausibly stated a claim for a violation of Title VII. Even though this claim may be unsupportable after discovery, it does not warrant dismissal at this stage of the proceedings. Accordingly, the Court denies the Defendant's Motion to Dismiss as to the Plaintiff's Title VII claim.

**D.     State Tort Law Claims**

Plaintiff Neal also asserts tort claims against the City based on Defendant Backs' employment status. If he was within the scope of employment at the time of the incident, then Plaintiff Neal asserts that the City was vicariously liable for the torts of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Second Amend. Compl. ¶ 41.) If he was not within the scope of employment at the time of the incident, then Plaintiff Neal asserts that the City was liable for negligent hiring, negligent retention, and premises liability. (*Id.*)

Under Indiana law, "in order for an employee's act to fall 'within the scope of employment' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business. *Barnett v. Clark*, 889 N.E.2d 281, 283–84 (Ind. 2008) (citations omitted). As the act of tying a noose and throwing it at Plaintiff Neal was not in furtherance of the City's business, the question for the Court is whether the facts as pled in

---

[2] The Court notes that those prior incidents alleged in the Amended Complaint of which the City was expressly aware—a 1993 memorandum from the mayor on the use of racial slurs and a 1996 lawsuit brought by an African American employee—are too remote to infer the City's constructive knowledge of a hostile work environment during the relevant time period.

the Complaint show that Defendant Backs' allegedly tortious conduct was incidental to authorized conduct.

The City argues that Defendant Backs' conduct was wholly of his own initiative and not incidental to any authorized conduct. *See Galluzzo v. Hosley Int'l, Inc.*, No. 2:11-CV-429-TLS, 2012 WL 3579747, at *6–7 (N.D. Ind. Aug. 17, 2012) (considering similar argument). Plaintiff Neal argues that Defendant Backs was on duty and supervising the employees at the time, and thus if some actions were authorized then "whether the unauthorized acts were within the scope of employment is [a question] for the jury." *Stropes v. Heritage House Children's Ctr.*, 547 N.E.2d 244, 249–50 (Ind. 1989).

The Court agrees with the City and believes that Defendant Backs was not acting within the scope of employment given the facts alleged. In brief, the Indiana Supreme Court in *Stropes* held that an employer whose employee's duties included bathing, undressing, and even touching the genitals of a disabled individual could be held liable for a sexual assault of the disabled individual by the employee because the act of sexual assault was "sufficiently associated" with the employee's authorized duties. *Stropes*, 547 N.E.2d at 250. The Indiana Supreme Court in *Barnett,* however, distinguished *Stropes* and held that an employer whose employee's duties included merely determining whether public aid was appropriate could not be held liable for a sexual assault of a client by the employee because the employee's "alleged acts of confining, sexually touching, and raping the plaintiff were not an extension of authorized physical contact" and were not "incidental to nor sufficiently associated with the [employee's] authorized duties." *Barnett*, 899 N.E.2d at 286. The Court finds that the facts as pled in the Amended Complaint do not reasonably suggest vicarious liability for Defendant Backs. His alleged act of throwing a hangman's noose at Plaintiff Neal to inflict negligent and intentional emotional distress was not

an extension of any authorized physical contact. Neither was Defendant Backs' alleged act incidental to or sufficiently associated with his authorized duties. Therefore, the City cannot be held vicariously liable for the alleged tortious acts of Defendant Backs under Indiana Law.

If the City cannot be held vicariously liable, Plaintiff Neal asserts a claim for direct liability based on negligent hiring, negligent retention, and premises liability. The City argues three points in support of its Motion to Dismiss: first, any tort claims are barred by the Indiana Worker's Compensation Act (WCA). Second, it is entitled to immunity under Indiana Code § 34-13-3-3(7), which grants immunity to a governmental entity for "the performance of any discretionary function." And third, that the Amended Complaint does not allege facts sufficient to show that the City was negligent.

The Indiana WCA states that "[t]he rights and remedies granted to an employee" under the WCA "on account of personal injury . . . by accident shall exclude all other rights and remedies of such employee . . . on account of such injury." Ind. Code § 22-3-2-6. Indiana courts have held that objections based on the exclusivity provision of the WCA should be brought as a motion to dismiss for lack of subject matter jurisdiction. *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) (stating that when an employer defends on the basis that the employee's claim is barred by the exclusivity provision of the WCA, "the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1)") (citing *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994)). However, the Seventh Circuit has instructed that a federal district court should analyze such a motion as a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). *Tacket v. Gen. Motors Corp.*, 93 F.3d 332, 334 (7th Cir. 1996) (stating that when a defendant argues that a federal district court lacks subject matter jurisdiction over a state

14

claim because a state court would lack subject matter jurisdiction, then the defendant is arguing that the plaintiff "has failed to state a claim upon which relief can be granted" and "[t]he defendant's motion . . . is more properly characterized as a motion to dismiss under [Rule] 12(b)(6)"). A plaintiff has the burden to show why his claims should be allowed to go forward in spite of the WCA's exclusivity provision. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994) ("[W]hen the plaintiff's own complaint recites facts demonstrating the employment relationship and its role in the injuries alleged, the burden shifts to the plaintiff to demonstrate some grounds for taking the claim outside the [WCA].").

The exclusivity provision of the WCA bars a court from hearing a common law claim brought by an employee if the "employee's injury occurred by accident arising out of and in the course of employment." *Sims v. U.S. Fid. & Guar. Co.*, 782 N.E. 2d 345, 349–50 (Ind. 2003). The Court will analyze whether Plaintiff Neal's claims (1) occurred by accident, (2) arose out of the course of employment, and (3) occurred in the course of employment. First, whether an injury occurred "by accident" depends on the intent of the party advocating the application of the WCA. *Tippmann v. Hensler*, 716 N.E.2d 372, 376 (Ind. 1999) ("the appropriate test for determining whether the injury was accidentally caused is the question, 'Did the party who is advocating the applicability of the Act intend for harm to result from the actions that party undertook?'). Here the City advocates applicability of the WCA, and Plaintiff Neal does not suggest that the City intended, by its actions, to cause the psychological injuries that he sustained. Because the City did not intend the injuries alleged by Plaintiff Neal, the Court finds that the incidents outlined in Plaintiff Neal's claims occurred "by accident."

Second, an "injury 'arises out of' employment when a causal nexus exists between the injury . . . and the duties or services performed by the injured employee." *DePuy, Inc. v. Farmer*,

15

847 N.E.2d 160, 164 (Ind. 2006). Plaintiff Neal does not suggest or argue that his injury was unrelated to his employment. The Amended Complaint suggests, on the contrary, that Plaintiff Neal was performing his normal job duties at the time his alleged injuries occurred. Therefore, the Court finds that Plaintiff Neal's alleged injuries arose out of his employment for the purposes of the WCA.

Third, an "accident occurs 'in the course of' employment when it takes place at the time and place of a person's employment while an employee is fulfilling his duties." *Global Constr., Inc. v. March*, 813 N.E.2d 1163, 1166 (Ind. 2004). The Amended Complaint makes clear that Plaintiff Neal's alleged injuries took place at the time and place of his employment, while he was fulfilling his duties, and he does not suggest or argue otherwise. Therefore, the Court finds that Plaintiff Neal's alleged injuries occurred in the course of his employment for the purposes of the WCA. Accordingly, the WCA's exclusivity provision applies to bar Plaintiff Neal's state tort claims against the City. Having no need to consider the City's alternative arguments, the Court dismisses these claims.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Rick Backs' Motion to Dismiss and GRANTS IN PART and DENIES IN PART Defendant City of Marion, Indiana's Motion to Dismiss. The Court GRANTS the Motion as to the 42 U.S.C. § 1983 claim and loss of

---

[3] In the Response, Plaintiff Neal argued that the Court delay ruling on the WCA's applicability because submitting additional documents in support of his tort claims would convert the Motion to Dismiss into one for summary judgment. (*See* Pl.'s Resp. 11–12) A court has discretion to consider attached materials and to convert a 12(b)(6) motion into a summary judgment motion, *Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002), but a plaintiff may not "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] that his claim ha[s] no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Should those alluded-to documents substantiate his claims, the Plaintiff is free to refile.

consortium claim against Defendant Rick Backs, and GRANTS the Motion as to the state tort law claims against Defendant City of Marion, Indiana. The Court DENIES the Motion as to the Title VII claim against Defendant City of Marion, Indiana. Therefore, Plaintiff Neal may proceed on his Title VII claim against Defendant City of Marion, Indiana.

SO ORDERED on October 12, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT